**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,     )
                                      )      Case No. 08-cr-1009
        v.                           )
                                        )      Judge Robert M. Dow, Jr.
TERRENCE BROWN and             )
LYNN ROWE.                     )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Government's consolidated motions *in limine* [76], the Government's motion to dismiss count one without prejudice [111], the Government's unopposed second motion *in limine* [112], and Defendant Rowe's motion for the admission of co-defendant statements [104]. For the reasons stated below, the Government's consolidated motions [76] are granted in part and denied in part, the Government's motion to dismiss count one [111] is granted, the Government's unopposed second motion *in limine* [112] is granted, and Defendant Rowe's motion [104] is granted in part and denied in part.

**I.       Background**

In the summer of 2008, the Drug Enforcement Administration ("DEA") developed two cooperating sources (hereinafter, "CS-1" and "CS-2"). CS-1 and CS-2, together with others, ran a large-scale drug trafficking organization ("DTO"), centered in Chicago, Illinois. The DTO imported thousands of kilograms of cocaine and hundreds of kilograms of heroin from Mexico to Chicago, Illinois and elsewhere. In early December 2008, CS-1 and CS-2 agreed to set up a number of undercover narcotics transactions with DTO customers, including Defendants.

On December 3-4, 2008, CS-1 and CS-2 participated in five recorded calls with Defendant Terrence Brown. Law enforcement officers were present in the room during these calls and recorded these calls while listening to both sides of the conversation. According to the

Government, during these calls, Brown agreed to purchase 10 kilograms of cocaine from CS-1 and CS-2. On December 4, 2008, DEA arranged for an undercover officer to deliver 10 kilograms of look-alike substance to Brown.

The indictment alleges that on December 4, 2008, Defendant Lynn Rowe was a passenger in a blue Dodge Durango that was driven by Brown. The two traveled together to the area of 31st Street and Normal Street in Chicago to meet with an individual who, unbeknownst to Brown and Rowe, was an undercover DEA officer, and to take delivery of 10 kilograms of cocaine. During the meeting, the undercover officer retrieved a bag containing 10 kilograms of a cocaine look-alike substance, entered the rear driver side of the Durango, and placed the bag on the back seat. According to the indictment, as Brown reached for a bag containing approximately $14,740 in cash, Rowe exited the front passenger side of the Durango, entered the rear passenger side door, and sat next to the undercover officer. The indictment further alleges that once in the back seat, Rowe looked inside the bag containing the look-alike kilograms and appeared to be counting the kilograms. Brown then handed Rowe the bag of cash, which Rowe then handed to the undercover officer. After the officer took the cash and exited the Durango, Brown and Rowe were arrested. During the arrest, agents recovered two cell phones from Brown's person (hereinafter referred to as "Brown phone 1" and "Brown phone 2") and three cell phones from Rowe's person (hereinafter, "Rowe phone 1," "Rowe phone 2" and "Rowe phone 3"). During a search of the Durango, agents recovered a loaded pistol in a hidden compartment.

According to the Government, the testimony at trial will show that after being advised of his *Miranda* rights, Brown gave a post-arrest statement. Brown stated that he met an individual called "Wodie" in approximately 2003 or 2004, whom Brown described as a Hispanic male.

Brown admitted that on five prior occasions, he had purchased 10 or more kilograms of cocaine from "Wodie." Brown further stated that his last purchase from "Wodie" was two months prior to the December 2008 transaction and involved eight kilograms of cocaine. Brown also admitted to purchasing a few ounces of cocaine from "Wodie" in approximately 2004 or 2005. Further, Brown admitted that "Wodie" fronted him a kilogram of cocaine in approximately 2004 or 2005, but Brown stated that he could not sell the kilogram so he gave it back. Brown also stated that he had purchased pound quantities of marijuana from "Wodie" during the 2003-04 time period.

With respect to the December 4, 2008 transaction, Brown admitted that he had agreed to purchase 10 kilograms of cocaine at $28,500 per kilogram. Further, Brown admitted that the money he brought to the transaction represented payment for narcotics. When asked about Rowe's role, Brown stated that he did not know why Rowe came to the pick-up and he did not know why Rowe entered the backseat of the vehicle. Brown admitted that the gun in the vehicle was his.

On August 13, 2009, Defendants Lynn Rowe and Terrence Brown were charged together in a superseding indictment with one count of knowingly and intentionally attempting to posses with intent to distribute 5 kilograms or more of cocaine in violation of Title 21, United States Code, § 841(a)(1) (Count II). Defendant Brown also was charged with one count of conspiracy under 21 U.S.C. § 846 (Count I) and one count of possessing a firearm in furtherance of the drug-trafficking crime alleged in Count Two in violation of 18 U.S.C. § 924(c) (Count III). The Government has filed a motion [111] to dismiss the conspiracy count, which the Court grants. The Government has indicated that during trial it intends to proceed on an aiding-and-abetting theory with respect to Rowe.

## II.      Legal Standard

A motion *in limine* is a motion "at the outset" or one made "preliminarily."  BLACK'S LAW DICTIONARY 803 (8th ed. 2004).  The power to rule on motions *in limine* inheres in the Court's role in managing trials.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose."  *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that, when used properly, the motions may sharpen the issues for trial).  The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose.  *Robenhorst v. Dematic Corp.*, 2008 WL 1766525, at *2 (N.D. Ill. Apr. 14, 2008).

Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial.  *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); see also *Luce*, 469 U.S. at 41-42 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").  In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial.  *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury).  Finally, although motions *in limine* typically address evidentiary matters, they may also relate to other matters, such as affirmative defenses and proper lines of inquiry at trial.  See, *e.g.*, *United States v. McCloud*, 590 F.3d 560, 566-68 (8th Cir. 2009) (affirming trial court's *in limine* ruling regarding a mistake-of-age defense); *United States v. Price*, 520 F.3d 753 (7th Cir. 2006) (recounting a case's procedural history).

**III.    Government's Consolidated Motions *in Limine* and Second Motion *in Limine***

**A.    Motion to Admit Audio Recordings**

In its consolidate motions *in limine*, the Government set forth the foundation it intends to present in support of its request to admit into evidence five audio recordings involving Brown and CS-1 and CS-2, along with the Seventh Circuit precedent approving of the Government's proffered foundation.   See *United States v. Eberhart*, 467 F.3d 659, 667 (7th Cir. 2006) (upholding the admission of recordings even though the sponsoring agent "did not listen to [defendant's] half of the conversations as they occurred, [because] his testimony sufficiently established the tapes authenticity by clear and convincing evidence.").   The Government does not intend to call CS-1 or CS-2 as witnesses at trial, but instead intends to introduce the recordings through the testimony of a law enforcement officer who recorded the conversations while simultaneously listening to both sides of the conversations.   Neither Brown nor Rowe objects to the recordings on foundation grounds, but instead raise other objections.

Brown raises a limited relevance objection, acknowledging that "the recordings may be admissible to prove the attempted possession charge" while contending that the recordings "may not be used to prove the existence of a conspiracy."   Because the Government has dismissed the conspiracy count, Brown's objections to using the recordings to prove the existence of a conspiracy need not be addressed.

Rowe joins in Brown's objection to the relevancy of the recordings and also claims unfair prejudice.   However, even if Rowe had been severed from Brown for trial, which the Court has declined to do [see 106], the recordings still would be admissible against Rowe, although not for the truth of any matters asserted in the recordings.   Rather, the recordings are admissible to establish the nature and objective of Brown's criminal conduct, which the Government alleges

Rowe aided and abetted.[1]  See, *e.g.*, *United States v. Guyton*, 36 F.3d 655, 658-59 (7th Cir. 1994) (upholding admission of out-of-court statement of defendant's supplier that defendant was "out of cocaine," reasoning that "[t]he government in this case had no interest in proving that [defendant] was out of cocaine. Rather, the statement was offered as evidence of the conspiracy and who was involved in it."); accord *United States v. Tuchow*, 768 F.2d 855, 868 (7th Cir. 1985) (upholding admission of prior negotiations relating to bribe payment that pre-dated defendant's participation in the conspiracy, reasoning that the "statements were not offered to prove the truth of the statements offered, but rather to set forth the illegality, nature and scope of the anticipated conspiratorial scheme"); see also *United States v. Faulkner*, 439 F.3d 1221, 1226-27 (10th Cir. 2006) (explaining "verbal acts" doctrine and noting that statements "directing the conduct of a fellow conspirator or agreeing to follow directions" are not hearsay); *United States v. Roach*, 164 F.3d 403, 410 (8th Cir. 1998).  Brown's statements negotiating the transaction with CS-1 and CS-2 are verbal acts that the Government offers not for the truth of the matters asserted, but to establish the nature and objective of Brown's criminal conduct.[2]  These recordings do not mention Rowe or even allude to a third party's participation in the December 4, 2008 transaction.  Although the recordings provide background and context for the subsequent actions of Brown and Rowe, the recordings, in and of themselves, do little (if anything) to inculpate Rowe directly.  Thus, there is little danger of unfair prejudice, and as the Seventh Circuit has repeatedly stated, "limiting instructions are effective in reducing or eliminating unfair prejudice," *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008).  Thus, the Government's motion *in limine* to admit audio recordings is granted.

---

[1]  If Defendant Rowe believes a limiting instruction is appropriate, he may offer one for the Court's consideration.

[2]  In contrast, Brown's subsequent post-arrest statements admitting that he had agreed to purchase 10 kilograms of cocaine for $28,500 per kilogram would be hearsay as to Rowe.

### B.    Brown's Post-Arrest Statements

####    1.    404(b)

The Government has filed a second unopposed motion *in limine* to admit limited evidence regarding Defendant Brown's prior dealings with CS-1 and CS-2 for the purposes of showing knowledge, intent, and the absence of mistake and to avoid jury confusion with respect to count two of the superceding indictment.   In particular, the Government seeks to admit evidence that Brown met "Wodie" in approximately 2003 or 2004.   Further, the Government would elicit Brown's admission that he had purchased kilogram quantities of cocaine from "Wodie" on prior occasions.   The Government also wishes to elicit Brown's admission that "Wodie" had previously "fronted" narcotics to him. Finally, the government would elicit Brown's statement that, in connection with prior cocaine received from "Wodie," Brown had sold the cocaine in ounce quantities to multiple customers.

Brown does not oppose the Government's motion.   However, because of the co-Defendant's presence in this case, the Court briefly addresses the admissibility of the evidence under 404(b).   The Government contends that the proposed evidence is admissible under FRE 404(b) because the evidence is offered for relevant, non-propensity purposes.   Rule 404(b) provides a non-exhaustive list of purposes for which evidence is admissible:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident * * *.

The Seventh Circuit has instructed that, under Rule 404(b), evidence of other acts is admissible so long as the evidence is not introduced to show the defendant's bad character.   See, *e.g., United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (prior drug sales admissible to explain coded term); *United States v. Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009) (prior drug sales

admissible to show intent); *United States v. Edwards*, 581 F.3d 604, 609 (7th Cir. 2009) (prior drug sales admissible to show possession); *United States v. Canady*, 578 F.3d 665, 671-72 (7th Cir. 2009) (prior criminal uses of firearm admissible to show possession of the same firearm).

In explaining the scope of Rule 404(b), the Seventh Circuit has emphasized that Rule 404(b)'s purpose "is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person * * * * No other use of prior crimes or other bad acts is forbidden by the rule, and the draftsmen did not try to list every possible other use." *Taylor*, 522 F.3d at 735-36. Thus, Rule 404(b) permits evidence of other crimes to be introduced not only for the explicitly-listed purposes, but also for any other relevant purpose, such as "the need to avoid confusing the jury." *Id.* at 736. For example, in a drug case, "the fact that a defendant's buyers had dealt with him previously could explain how they were able to identify him, why they picked him for the controlled buy, and why he was willing to deal with them." *Id.* at 734.

The limited evidence set forth above regarding Brown's prior dealings with "Wodie" is relevant for the non-propensity purposes of showing Brown's knowledge, intent, and absence of mistake, and to avoid jury confusion in a few respects. Initially, the evidence explains how CS-1 and CS-2 were in a position to plausibly offer 10 kilograms of cocaine—at a price of approximately $285,000—to Brown and why Brown was willing to deal with them. See, *e.g.*, *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008) (upholding admission of testimony of witness's prior drug purchases from defendant to, among other things, "explain[] how [the witness's] relationship with [defendant] developed to the point that [the witness] could easily purchase drugs from [defendant] after only a quick phone call") (overruled on other grounds). As in *Taylor*, "the fact that defendant's [suppliers] had dealt with him previously could explain how they were able to identify him, why they picked him for the [undercover transaction], and

why he was willing to deal with them." 522 F.3d at 734. Absent such evidence, the jury could be left with the impression that CS-1 and CS-2 "fabricated a planned drug sale in order to curry favor with the government." *United States v. Edwards*, 581 F.3d 604, 609 (7th Cir. 2009) (upholding evidence of defendant's prior drug sales to show defendant's knowledge that the transaction that was the subject of the charged transaction involved drugs). In addition, absent evidence of CS-1 and CS-2 previously "fronting" narcotics to Brown, the jury might question why Brown brought only $14,470 to the transaction, when he was supposed to receive approximately $285,000 worth of cocaine.

Further, the Seventh Circuit has repeatedly upheld the admission of prior narcotics transactions where a defendant's knowledge will be at issue. See *United States v. Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009) (citing cases). This is perhaps especially true where, as here, the defendant uses coded language in carrying out his illegal activities. See *Taylor*, 522 F.3d at 735-36 (recognizing that evidence of prior drug transactions was relevant to "avoid confusing the jury" where the defendant spoke in code in referring to a drug transaction); *Harris*, 536 F.3d at 808 (upholding admission of prior narcotics transactions where "[defendant's] counsel repeatedly noted that the audio and video recordings presented at trial lacked discussion about drugs"); accord *United States v. Harris*, 271 F.3d 690, 705 (7th Cir. 2001) (upholding admission of evidence of prior drug transactions under intricately-related doctrine where defendant used "veiled language" in negotiating charged transactions, noting that absence this evidence "the jury would have been left with a somewhat confusing and incomplete picture"). Moreover, evidence that Brown distributed cocaine previously received from "Wodie" in ounce quantities to multiple customers may tend to show Brown's intent to distribute, a required element of the second count. See *Harris*, 536 F.3d at 808 (evidence of prior distributions also is relevant for the non-

propensity purpose of showing Brown's intent to distribute).  Based on the foregoing analysis, the limited historical evidence set forth above is relevant for the non-propensity purposes of showing Brown's knowledge, intent, absence of mistake, and to avoid jury confusion.

Additionally, evidence that Brown previously purchased kilogram quantities of cocaine from CS-1 and CS-2—and had narcotics "fronted" to him by CS-1 and CS-2—are sufficiently similar to the crime charged, and Brown's prior conduct is corroborated by Brown's conduct on December 4, 2008, and the recordings from December 3-4, 2008.

Finally, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Indeed, as noted above, there is a danger of jury confusion in the absence of this limited evidence of Brown's prior dealings with CS-1 and CS-2.  Further, "[e]vidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008). And as the Seventh Circuit has repeatedly recognized, an appropriate limiting instruction can "alleviate[] any potential prejudice caused by the testimony." *Harris*, 536 F.3d at 810.

### 2.     *Brown's post-arrest statements concerning Rowe*

At trial, the Government intends to introduce Brown's statements regarding the December 4 transaction and his historic dealings with the source of supply for the December 4 transaction (who Brown knew as "Wodie").  During his post-arrest statement, Brown also made certain limited statements relating to Rowe.  Specifically, Brown stated (1) that he did not know why Rowe came to the December 4 transaction and (2) that he did not know why Rowe entered the backseat of the vehicle after the undercover officer placed the cocaine in the rear of the vehicle.

Brown does not object to the Government's motion *in limine* relating to Brown's post-arrest statement, but Rowe does. In addition to objecting to the Government's motion *in limine*, Rowe also filed a motion *in limine* and brief supporting admission of co-defendant statements [104]. The question presented by the two motions is whether Brown's post-arrest statements about Rowe may (or must) be provided to the jury either in the Government's case-in-chief or in Rowe's.

In his motion, Rowe seeks to admit the post-arrest statements that Brown made, citing to a number of non-hearsay or hearsay exceptions for their admission at trial. First, Rowe argues that Brown's post-arrest statements concerning Rowe's involvement in the events of December 4 are admissible as an admission by a party-opponent. To the extent that the Government offers portions of Brown's post-arrest statement at trial against *Brown*, it is an admission by a party-opponent under Fed. R. Evid. 801(d)(2)(A). Rule 801(d)(2)(A) provides that a statement is not hearsay if "[t]he statement is *offered against a party* and is (A) the party's own statement * * *." (emphasis added). As the Seventh Circuit explained, any statement by a party is admissible under this rule as long as it is "offered as evidence by the opposing party." *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000). The rule renders a statement non-hearsay "if it was made by the party against whom it is offered," and allows for admission of "those statements made by one party, but offered as evidence by the opposing party." *Id.* at 770; see also *United States v. McGee*, 189 F.3d 626, 632 (7th Cir. 1999) (Rule 801(d)(2)(A) requires "only [that] a party's own statement [be] offered against the party"). However, in analyzing who qualifies as a party-opponent, courts have held that one defendant is not the opponent of his co-defendant, but rather, co-defendants are the opponents of the government alone. See *United States v. Harwood*, 998 F.2d 91, 97 (2nd Cir. 1993) (concluding that a co-defendant's statement is not an admission by a

party opponent and rejecting defendant's argument that his co-defendant's "statements were admissions by a party opponent * * * * The Government is the party opponent of both defendants."); see also *United States v. Gossett*, 877 F.2d 901, 906 (11th Cir. 1989) (admission sought to be introduced was made by a co-defendant who is not a party opponent). Rowe does not cite to any contrary precedent. In short, Brown's statements concerning Rowe's conduct are not statements of a party-opponent. Brown and Rowe are both party-opponents of the Government but not party-opponents of one another. *Harwood*, 998 F.2d at 97. Thus, Brown's statements do not fall within Rule 801(d)(2).

Rowe next argues that Brown's post-arrest statements fall within Rule 804(b)(3)'s hearsay exception for statements against interest by an unavailable party. Rule 804(b)(3) provides a hearsay exception for a "statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3). In evaluating whether to admit evidence under this rule, courts look to three factors: whether (1) the declarant is unavailable to testify at trial; (2) the statement was against the declarant's penal interest; and (3) corroborating circumstances exist that bolster the statement's trustworthiness. *United States v. Leahy*, 464 F.3d 773, 797-98 (7th Cir. 2006).

Although there is no dispute that were defendant Brown to assert his Fifth Amendment right against self-incrimination at trial, he would be unavailable within the meaning of this rule (see *Morrison v. Duckworth*, 929 F.2d 1180 (7th Cir. 1991) (unavailability at trial includes a declarant's refusal to testify on the basis of the Fifth Amendment)), Rowe cannot make the necessary showing as to either the second or the third elements of the Rule 804(b)(3) test. Under the second prong, Rowe must show that the portions of Brown's statements relating to Rowe

were against *Brown*'s penal interest at the time they were made. See *Williamson v. United States*, 512 U.S. 594, 600 (1994) (finding under Rule 804(b)(3) that non-inculpatory statements are not admissible even if made within the broader context of a generally inculpatory narrative). But the Seventh Circuit has held that Rule 804(b)(3) does not apply to a declarant's exculpatory statements about a co-defendant's non-involvement in a crime. See *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004) (holding that a statement by a co-defendant tending to exonerate the defendant was not against the co-defendant's penal interest). In *Bonty*, the defendant sought to introduce his co-defendant's exculpatory post-arrest statement made to law enforcement officers that "[defendant] had nothing to do with the events of September 27." *Id*. The Seventh Circuit held that this statement could not meet the second prong of the 804(b)(3) test because "a statement is against penal interest if it subjects *the declarant* to criminal liability." *Id*. (emphasis added); see also *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995). Because the co-defendant's statement concerning the defendant's alleged non-involvement "did not tend to implicate [the co-defendant] and was not against [the co-defendant's] penal interest," Rule 804(b)(3) did not apply. *Bonty*, 383 F.3d at 579; see also *Harwood*, 998 F.2d at 98 (statements by co-defendant suggesting that defendant was arrested at an inopportune time "on their face, do not expose [the co-defendant] to criminal liability"; "we have rejected similar efforts by one defendant to shift blame away from another with purported declarations against the former's penal interest"). Here, Brown's post-arrest statements about *his own criminal conduct* were statements against his penal interest in that he admitted to his long term cocaine relationship with CS1 and CS2, and that he intended to receive 10 kilograms of cocaine during the December 4 transaction. But the portion of Brown's statement relating to Rowe did not implicate Brown.

Brown's statements also fail to satisfy the third requirement of Rule 804(b)(3): that the corroborating circumstances suggest that the statements are trustworthy. *Leahy*, 464 F.3d at 797-98. In fact, other evidence that the Government intends to present at trial casts Rowe's actions that day in a different light that very plausibly could be viewed as inconsistent with Brown's post-arrest statement. In particular, the Government states that it will offer testimony that, during the transaction, Rowe exited the front seat of the Durango and entered the backseat after the undercover officer placed the black bag containing 10 kilograms of sham cocaine in the backseat. Once in the back seat, Rowe looked inside the bag containing the look-alike kilograms and appeared to be counting them. Brown then handed Rowe the bag containing cash, which Rowe then handed to the officer. These actions certainly can be viewed as being inconsistent with the claim that Rowe did not know the purpose of the December 4 transaction and that Rowe's reasons for moving to the backseat were unknown to Brown. Such inconsistency, coupled with evidence regarding a pre-existing relationship between the Brown and Rowe (see below) and the absence of any other evidence tending to confirm Brown's statements, are sufficient to undermine any characterization of Brown's post-arrest statements about Rowe as "trustworthy," even if they remain relevant and, if believed, subject to differing interpretations. See, *e.g.*, *United States v. Phillips*, 198 Fed. Appx. 558, 561 (7th Cir. 2006) (eyewitness who "had given several inconsistent accounts" of the events in question and who had a close relationship to the defendant could not satisfy the third prong of the Rule 804(b)(3) test). Thus, Brown's statements are not admissible under Rule 804(b)(3).

Third, Rowe seeks to admit Brown's statements under the residual hearsay exception of Rule 807 (formerly Rule 803(24)). Rule 807, in pertinent part, provides as follows:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule,

> if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Under this exception, a hearsay statement must meet five requirements to be admissible: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice. *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999). Like Rule 804(b)(3), "[c]ritical to the admission of a hearsay statement under [Rule 807] is a finding by the district court that the statement is trustworthy." *Id*. As the Seventh Circuit has emphasized, the residual exception to the hearsay rule should be narrowly construed. See *Keri v. Bd. of Trustees of Purdue Univ*., 458 F.3d 620, 631 (7th Cir. 2006); *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) ("We begin by noting this circuit's emphasis on narrowly construing the residual provision to prevent it from becoming the exception that swallows the hearsay rule."). For the reasons already discussed, Brown's statements concerning Rowe do not carry a sufficient guarantee of trustworthiness to justify invoking a narrow exception to the general rule. Indeed, the court is not aware of any "corroborating" evidence bolstering the statements' trustworthiness (see Leahy, 464 F.3d at 797-98), and the only other evidence to which either side points – the testimony concerning Rowe's actions in the Durango on December 4 – plainly does not advance Rowe's argument for invoking the exception here. Because Brown's statements as they relate to Rowe do not have circumstantial guarantees of trustworthiness, they cannot be admitted under the residual hearsay exception.

Rowe also cites to broader Supreme Court authority, including *Chambers v. Mississippi*, 410 U.S. 284 (1973), in support of the general argument that excluding Brown's statements would violate his Sixth Amendment right to present a defense at trial that includes exculpatory

evidence. In *Chambers*, the Supreme Court held that state hearsay rules "may not be applied mechanistically to defeat the ends of justice."[3] *Chambers*, 410 U.S. at 302. In interpreting this holding, the Seventh Circuit has observed that *Chambers* does not require "the admission of *untrustworthy* hearsay in the interest of justice." *Phillips*, 198 Fed. Appx. at 561 (emphasis in original) (affirming the exclusion of a non-testifying eyewitness's hearsay statements exculpating defendant under Rule 804(b)(3) because of the witness's inconsistent accounts and close relationship to the defendant). Nor is the Court required to admit hearsay statements just because they might be exculpatory. *United States v. Loggins*, 486 F.3d 977, 981-82 (7th Cir. 2007) (finding that statement by co-defendant during co-defendant's plea colloquy that defendant "was present" at the bank robbery "but didn't know what was about to happen" lacked the exculpatory significance and reliability necessary to support a Sixth Amendment violation under *Chambers*). Here, Brown's statements concerning Rowe are hearsay and do not provide the necessary assurance of reliability for the reasons discussed above. In addition, they lack exculpatory significance of the statement that was present in *Chambers*—a confession to the crime on more than one occasion by someone other than the defendant. *Loggins*, 486 F.3d at 982. As such, Rowe would not be fundamentally deprived of a fair trial through the exclusion of the statements.

All of Rowe's arguments for potentially using Brown's post-arrest statements about Rowe

---

[3]  In *Chambers*, the defendant sought to introduce the out-of-court statements of a declarant who made and later repudiated a confession, but defendant was prevented from cross-examining the declarant at trial under state hearsay rules. The Supreme Court held that the exclusion of the confession evidence, coupled with defendant's inability to cross-examine the declarant, denied defendant due process and a fair trial. *Id.* at 302-03. The Supreme Court found that the hearsay testimony was critical to the defendant's defense and that the statements were made "under circumstances that provided considerable assurance of their reliability" because the declarant made multiple admissions that he was the actual killer. *Id.* at 300. The *Chambers* Court noted, however, that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 295.

affirmatively in Rowe's case-in-chief thus founder on Rowe's inability to overcome the Government's objections. What remains for decision—and, in the Court's view, presents the far more difficult legal question—is whether the portion of Brown's post-arrest statement that might be viewed as exculpating Rowe should be admitted under the rule of completeness. Anticipating that line of argument, the Government moved *in limine* to exclude any use of Brown's post-arrest statements about Rowe in that fashion. The Government intends to offer Brown's post-arrest statement solely as to Brown and intends to offer a limiting instruction, which will instruct the jury that Brown's post-arrest statement is not evidence against Rowe. With those premises, the Government contends that Brown's statements relating to Rowe are not "necessary to clarify or explain" Brown's admissions relating to his own conduct and that omitting those portions of the statement will not result in a "misleading impression." *United States v. Glover*, 101 F.3d 1183, 1189 (7th Cir. 1996).

Federal Rule of Evidence 106, which stems from the common law doctrine of completeness, provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.[4] Under the Rule, "a party against whom a fragmentary statement is introduced may demand that any other part of the statement be admitted as would be necessary to clarify or explain the portion already received, and thus to avoid any misleading impression that would be created by offering the statement outside its true context." *United States v. Glover*, 101 F.3d 1183, 1189 (7th Cir. 1996); see also *United States v. Haddad*, 10 F.3d 1252, 1258-59 (7th Cir. 1993); *United States v. Lewis*, 954 F.2d 1386, 1391 (7th Cir. 1992). The right to have some

---

[4] Although Rule 106 only applies by its terms to writings or recordings, the Seventh Circuit has applied a Rule 106 analysis to oral statements. *Haddad*, 10 F.3d at 1258.

other portion of a statement admitted as evidence contemporaneously with the portion already received is not unqualified; "indeed, the proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent." *Glover*, 101 F.3d at 1189-90; see also *United States v. Sweiss*, 814 F.2d 1208, 1211 (7th Cir. 1987) (quoting *United States v. Walker*, 652 F.2d 708, 710 (7th Cir. 1981)) (internal quotations omitted); see *Lewis, 954 F.2d at 1391; United States v. Velasco*, 953 F.2d 1467, 1474-75 (7th Cir. 1992); *United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986). The burden is on the defendant to demonstrate that the additional statements are relevant, and that they "clarif[y] or explai[n] the portion offered by the opponent." *Glover*, 101 F.3d at 1190.

As explained by the Seventh Circuit in *Velasco*, the test of admissibility under Rule 106 is conjunctive. Thus, once the proponent of the evidence establishes its relevance, a court must address the second part of the test by asking (1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will "insure a fair and impartial understanding of all of the evidence." *Velasco*, 953 F.2d at 1475; see also *Glover*, 101 F.3d at 1190. Courts are given considerable discretion in determining the admissibility of the additional evidence offered under Rule 106, and decisions will not be disturbed absent an abuse of discretion. See, *e.g.*, *Glover*, 101 F.3d at 1190.

As referenced above, the Government's theory is that Rowe aided and abetted Brown. Brown's statements that he did not know why Rowe came to the December 4 transaction and did not know why Rowe shifted from the front passenger seat to the back seat of Durango clearly are relevant to the issues in this case. By introducing both Brown's post-arrest statement as it relates

to the events of December 4 as well as the numerous phone contacts between the co-defendants in the weeks leading up to the December 4 transaction (see below), the Government wants the jury to infer that Defendants were partners in the drug transaction, not just friends, and to eliminate any possible inference that Rowe was simply an innocent bystander. Stated another way, facts of consequence critical to the government's case (as the Government acknowledges) are (1) whether Rowe "knowingly associated himself" with Brown's attempted possession with intent to distribute, (2) whether Rowe participated in that delivery, and (3) whether Rowe tried to make it succeed. See *Velasco*, 953 F.2d at 1475. Rowe therefore raises a fair point in arguing that evidence that he was not there to aid and abet, but rather was "just there," is highly relevant to his potential defense. Even if that evidence lacks any corroboration or circumstantial guarantees of trustworthiness, it still has a contextual connection to the other testimony and evience and may help to "insure a fair and impartial understanding of all of the evidence."

To be sure, whether Brown's statements regarding Rowe make the selected portions of Brown's post-arrest statement more complete is only one consideration. The other factors set forth in the controlling Seventh Circuit cases appear to direct the Court to look at whether the proposed "rule of completeness" evidence, in the context of all of the evidence presented at trial, helps to present a more complete picture for the jury. In terms of the overall context and in viewing all of the evidence together, the statement regarding Rowe's culpability ensures that the jurors receive relevant evidence as to the aiding and abetting charge, from which they then can draw their own inferences. Because the Government's theory is that Rowe aided and abetted Brown in the transaction, a fair reading of Brown's statements regarding Rowe are that they are "connected contextually" to Brown's statements regarding his own conduct. See *United States v. Price*, 516 F.3d 597, 605 (7th Cir. 2008) ("A statement admitted on "completeness" grounds

must be connected contextually to the previously introduced evidence, such that the exclusion of that statement is likely to create an incomplete * * * picture of the evidence").  Regardless of the trustworthiness of the statements (addressed in other parts of the Court's opinion), the statements regarding Rowe's participation round out Brown's other statements, particularly in the context of the Government's contentions that Rowe acted unlawfully in aiding and abetting Brown.  As alluded to above, the Government has ample testimony and evidence with which to counter any "innocent bystander" theory that Rowe may offer at trial based on the few lines of Brown's post-arrest statement that, if credited by the jury, may tend to support such a defense.

Finally, in looking at the few lines of testimony that Rowe seeks to admit under Rule 106 in the context of Brown's full post-arrest statement, as well as the other evidence that the Government has indicated it intends to use and the Government's theory of the case, the Court cannot conclude that the post-arrest statements about Rowe would be likely to confuse or mislead the jury.  If the remainder of Brown's statement is viewed in isolation, perhaps it could be said that the additional lines that Rowe seeks to admit bring Rowe into a picture in which he might otherwise not be present.  But when the context is broadened to include "all of the evidence" (*Glover*, 101 F.3d at 1190) and the jury's understanding of it, there is no escaping Rowe's presence at the transaction.  Moreover, the statements that pertain to Rowe are so brief that they cannot be said to muddy (or detract from) the probative force of Brown's statements about his own conduct.  See *id*. at 1191 (quoting a prominent treatise as recognizing that "[a] court is more likely to find that fairness requires completeness when the requesting party wants one more line read, than were he is insisting that twenty additional documents must be

introduced") (citing 21 Charles Allen Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE

AND PROCEDURE: EVIDENCE § 5077, at 369 (1977)).[5]

For these reasons, the Court concludes that while the issue presents a very close call, on

balance the pertinent factors governing the admission of "rule of completeness" evidence under

Rule 106 tilt slightly in favor of admitting Brown's post-arrest statements concerning Rowe.

Accordingly, the Court denies the Government's motion *in limine* as it pertains to Brown's post-

arrest statements related to Rowe and grants Rowe's motion with respect to the rule of

completeness as to the two statements Brown made concerning Rowe. However, Rowe's motion

to admit the statements in his case-in-chief under any of the other non-hearsay or hearsay

exceptions cited by Rowe is denied.

### C.     Brown's Request for a Bill of Particulars

In his response brief, Brown seeks a bill of particulars with respect to the conspiracy

count. Because the conspiracy count has been dismissed (see above) on the Government's

motion, Brown's request for a bill of particulars is denied as moot.

### D.     Evidence of Phone Contact between Brown and Rowe

The Government moves *in limine* to introduce evidence of extensive phone contact

between Rowe and Brown. The Government contends that the proposed evidence is admissible

under Rule 404(b) because the evidence is offered for a relevant, non-propensity purpose.

Defendant Brown acknowledges that "phone records for the week leading up to the transaction

---

[5] The Court also is cognizant of the Seventh Circuit's guidance that district judges should "be sensitive to the defendant's right to present evidence on his own behalf, as well as his right not to testify." *Glover*, 101 F.3d at 1192; see also *Walker*, 652 F.2d at 713-14 (noting that defendant was powerless to remedy distorted picture of his prior testimony without relinquishing his right not to take the stand). As the court of appeals has noted, "[i]n criminal cases where the defendant elects not to testify * * * more is at stake than the order of proof. If the Government is not required to submit all relevant portions of prior testimony which further explain selected parts which the Government has offered, the excluded portions may never be admitted." *Walker*, 652 F.2d at 713.

[are] probably relevant to the charges in the indictment," but objects to any evidence of phone contact outside a one-week window. Defendant Rowe acknowledges that the Government's proffered evidence permits a "plausible inference" that Brown and Rowe were "good friends," but suggests that admitting this evidence would permit the jury to infer "guilt by association."

As previously set forth in analyzing Brown's post-arrest statement, Rule 404(b) provides a non-exhaustive list of purposes for which evidence is admissible:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident * * *.

Rule 404(b) permits evidence of other crimes to be introduced not only for the explicitly-listed purposes, but also for any other relevant purpose, such as "the need to avoid confusing the jury."[6] *Id.* at 736.

Given the Government's intention to proceed under an aiding-and-abetting theory with respect to Rowe, the Government must prove that Rowe "knowingly associated himself with [Brown's attempted possession with intent to distribute], that [Rowe] participated in that

---

[6] Although the Seventh Circuit has now repudiated the "inextricably intertwined" doctrine as a basis for admitting evidence of other crimes, the Court has stated that "[a]lmost all evidence admissible under the 'inextricably interwoven' doctrine is admissible under one of the specific exceptions in Rule 404(b), or under the judge-made 'no confusion' exception * * *." *Taylor*, 522 F.3d at 735; *Canady*, 578 F.3d at 672 ("almost all evidence that is admissible under this doctrine would fall within one of the exceptions in Rule 404(b), and this case is no different"). Both Brown and Rowe also take issue with the Government's course of offering this evidence pursuant to Rule 404(b). But the rule extends to "other crimes, wrongs, or acts" – not explicitly limited to "bad" acts – and as the Seventh Circuit recently stated in *United States v. Gorman*, 613 F.3d 711, 718 (7th Cir. 2010), "[i]f evidence is not direct evidence of the crime itself, it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b)." As the Seventh Circuit has repeatedly recognized, rather than invoking a non-Rule based doctrine, applying Rule 404(b) has the virtue of focusing the analysis on non-propensity purposes and avoids the vice of the jury considering the other-acts evidence without a proper limiting instruction. *United States v. Conner*, 583 F.3d at 1011, 1024 (7th Cir. 2009). Thus, rather than take the position that evidence of the phone contacts falls outside the scope of Rule 404(b), the Government's position is that evidence of the phone contacts should be admitted because it satisfies the standards of Rule 404(b). The Government has indicated that it has no objection to an appropriate limiting instruction, if requested by Defendants.

delivery, and that [Rowe] tried to make it succeed." *United States v. Hatchett*, 245 F.3d 625, 631-32 (7th Cir. 2001). Here, phone records show approximately 296 contacts between Brown and Rowe during the October 1, 2008 through December 4, 2008 time period, including: (1) 16 contacts on December 3-4, 2008; (2) 28 total contacts during the week prior to the transaction; and (3) 68 total contacts in the two weeks prior to the transaction. As the Government acknowledges, it cannot argue at trial that this extensive phone contact is evidence of *past* criminal conduct. Instead, the Government intends to argue that this phone contact establishes a prior association between Brown and Rowe. In the event that Rowe argues that he was unaware of Brown's intention to commit a crime on December 4, 2008, the Government indicates that it will point to evidence of Rowe's conduct during the transaction—in particular, testimony that Rowe moved to the back seat to count the kilograms of cocaine and handed the bag of money to the undercover officer. In addition, the Government wishes to argue the common sense inference that Brown would not likely bring an innocent bystander with him to pick up $285,000 worth of cocaine. Instead, the Government will argue that it is more likely that Brown would bring a trusted associate to assist him in picking up the cocaine, someone in whom he could confide so that the person did not say or do the wrong thing while the transaction was taking place, or go to the police after witnessing the transaction. According to the Government, the extensive phone contact between Brown and Rowe leading up to the transaction supports the inference that Rowe was Brown's trusted associate, especially when considered together with Rowe's subsequent conduct during the transaction.

Both Brown and Rowe contend that there are alternative inferences that could be drawn from the extensive phone contact, when viewed in isolation. While both Brown and Rowe certainly may make those arguments to the jury, the existence of alternative inferences to be

drawn from the evidence does not undercut the relevance of the phone contacts, especially given the broad definition of relevance under Rule 401. See *United States v. Azteca Supply Co.*, 2010 WL 4962828 at *8 (N.D.Ill. Dec. 1, 2010). Nevertheless, Defendants' concerns must be considered in deciding whether, under Rule 403, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008) (internal quotations omitted). "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008). The general rule is that the balance should be struck in favor of admission (see *United States v. Hughes*, 310 F.3d 557, 565 (7th Cir. 2002) (internal quotations omitted)), and "limiting instructions are effective in reducing or eliminating unfair prejudice" (see *Vargas*, 552 F.3d at 557). As the Seventh Circuit has stressed, "'most relevant evidence is, by its very nature, prejudicial, * * * [but] evidence must be *unfairly* prejudicial to be excluded.'" *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) (quoting *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995)) (emphasis in original).

Here, evidence of the prior association between Brown and Rowe makes it more likely that Brown and Rowe were joint participants in criminal activity on December 4, 2008, as opposed to Rowe being an unwitting participant in Brown's criminal conduct. And the nature of the evidence—phone contacts—is less likely to stir jurors' emotions than other kinds of evidence showing a prior association that the Seventh Circuit has found admissible. See *United States v. Kellum*, 42 F.3d 1087, 1093 (7th Cir. 1994) (upholding admission of prior drug dealing with co-conspirators prior to date alleged in indictment, noting "this court has said that evidence of prior

bad acts is admissible under Rule 404(b) 'when those acts show the formation of the conspiracy or the prior relationship between conspirators'") (quoting *United States v. Prevatte*, 16 F.3d 767, 776 (7th Cir. 1994) (upholding admissibility of prior crimes noting, *inter alia*, "attempted burglary at the Whiting License Branch was the first time Soy joined the group and it therefore connects him with the other co-conspirators")); see also *United States v. Sanders*, 979 F.2d 87, 90 (7th Cir. 1992) (holding testimony admissible as showing reason why defendant would have been approached by coconspirators to purchase cocaine); *United States v. Traitz*, 871 F.2d 368, 389 (3d Cir. 1989) (upholding admission of uncharged acts of violence as relevant to show a "'shared tradition' of violence" and "'symbiotic relationship'").  Although Rowe is not charged with conspiring with Brown, the principle of relevance articulated by these cases applies by analogy to the joint criminal activity alleged to have taken place in this case.

The Government admits that the prior acts in question—Rowe's phone contacts with Brown—are not similar to the charged crime.  But as the Seventh Circuit has recognized, "the [similarity] test need not be unduly rigid and the prior and instant acts need only be sufficiently alike to support an inference of criminal intent.  The two acts must share common characteristics relevant to the purpose for which they are introduced.  Thus, the term "similarity" has been loosely interpreted and loosely applied."  *United States v. Montani*, 204 F.3d 761, 768 (7th Cir. 2000) (internal quotations omitted).  Put another way, "questions about 'how similar is similar enough' * * * do not have uniform answers; these answers * * * depend on the theory that makes the evidence admissible, and must be reached on a case-by-case basis."  *United States v. Torres*, 977 F.2d 321, 326 (7th Cir. 1992).

Here, the Government's relevance theory focuses on Rowe's knowledge.  Thus, there is a sufficient nexus between the prior acts—the high volume of phone communication between

Brown and Rowe, at least in the weeks leading up to the December 4 transaction—and the government's relevance theory, namely, that Rowe, as a trusted associate of Brown, knowingly associated himself with Brown's criminal activity. And the lack of identity between the prior acts and the crime charged actually weighs in favor of admitting the evidence, insofar as there is less concern for the propensity inference prohibited under Rule 404(b).

Based on the foregoing analysis, the Court grants in part the Government's motion *in limine* to admit evidence of extensive phone contact between Rowe and Brown. However, the Court limits the admission of the phone records to the two weeks prior to the December 4 transaction, when a sufficient nexus can be drawn between the calls and the transaction.[7]

### E.    Motion *in Limine* Regarding Penalties

The Government asks the Court to bar Defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties faced by Defendants if convicted. The Seventh Circuit consistently has held that "arguing punishment to a jury is taboo." See, *e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument or evidence concerning punishment is improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. See, *e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

---

[7] The Court notes that it has viewed each of the evidentiary matters contested in the motions in limine in light of the proffered evidence as a whole, the Government's theory of the case, and the potential defenses to which the parties have alluded. Like the Court's ruling on the rule of completeness issue, the ruling on the phone contacts will allow the jury to get a complete picture of the relevant testimony in the time frame leading up to, during, and immediately after the December 4 transaction, from which it will be the jury's duty to select the inferences and conclusions that it finds supported in the testimony.

Other than referring to the Government's argument as "boilerplate," Brown does not address the Government's requested relief regarding potential penalties. On the other hand, Rowe asks the Court to deny the government's motion. The motion is granted in that neither Defendant may reference penalties or any other evidence regarding the "serious nature" of the charges. This ruling does not "preclude Defendants from cross-examining any cooperators or government witnesses about penalties that they may face and benefits that they have received— or may receive—from the Government, including whether they were given immunity or promised leniency." *United States v. Azteca Supply Co.*, 2010 WL 4962828, at *6 (N.D. Ill. Dec. 1, 2010).

F.    **Argument or Evidence Designed to Elicit Jury Nullification**

Defendant Brown does not respond to this section of the Government's motion *in limine*, and Defendant Rowe agrees to avoid comment on "the conduct of the government or its prosecutorial motives." Thus, the Court grants the Government's motion, subject again to Defendants' right to "mak[e] inquiries into animus or bias during cross-examination" (see *Azteca Supply*, 2010 WL 4962828, at *6), provided that a good-faith basis exists for the line of inquiry (see *United States v. Beck*, 625 F.3d 410, 418 (7th Cir. 2010) ("No attorney may ask a question if he doesn't have a good-faith basis to ask it; that is, attorneys cannot take a shot-in-the-dark approach to their questions," although "an attorney does not need definitive proof to have a good-faith basis, just '[a] well reasoned suspicion that a circumstance is true'" (quoting *United States v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980)). The Court also grants the Government's motion *in limine* to bar any type of "outrageous government conduct" defense. Here, as in *United States v. Boender*, 2010 WL 811296 at *4 (N.D. Ill. March 3, 2010), Defendants do not "point to any reason why an 'outrageous government conduct' defense would be available,

particularly in a circuit where the defense is 'stillborn.'"

### G. Commentary Regarding Discovery in Presence of Jury

The Government asks the Court to preclude both sides from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Defendant Brown agrees to avoid commentary on discovery matters before the jury. On the other hand, Rowe seeks to preserve the right to "question state witnesses regarding any surprise presentation of evidence for the state that was not supplied in discovery." To the extent that Rowe (or Brown) may seek to exclude certain evidence based on unfair surprise (or otherwise), any such argument must be made outside the jury's presence. The Government's motion to bar comment on discovery matters before the jury is granted. *Azteca Supply*, 2010 WL 4962828, at *9. Both sides will be required to notify the Court of any additional discovery requests prior to commenting on those requests in the presence of the jury. See *United States v. Quinones*, 2003 WL 22697503 at *3 (N.D. Ill. 2003) (ordering that "all requests for additional discovery are to be made outside the presence of the jury").

### H. Meaning of Reasonable Doubt

Neither Defendant responded to the Government's request that the Court bar the Government and defense counsel from defining reasonable doubt. The Government's request is well taken and the motion is granted.

## IV.     Conclusion

For these reasons, the Government's consolidated motions [76] are granted in part and denied in part, the Government's motion to dismiss count one [111] is granted, the Government's unopposed second motion *in limine* [112] is granted, and Defendant Rowe's motion [104] is granted in part and denied in part.

Dated: January 6, 2010                              _____

                                                    Robert M. Dow, Jr.
                                                    United States District Judge