**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 08-cr-1009-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LYNN ROWE | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Lynn Rowe's Motion for a New Trial [152]. For the reasons stated below, the motion is respectfully denied.

**I.  Background**

On August 13, 2009, Defendants Lynn Rowe and Terrence Brown were charged together in a superseding indictment with one count of knowingly and intentionally attempting to posses with intent to distribute 5 kilograms or more of cocaine in violation of Title 21, United States Code, § 841(a)(1) (Count II).  On January 10, 2011, the Court issued an oral ruling ordering separate trials of Defendants Brown and Rowe.  At trial, the Government proceeded on an aiding-and-abetting theory with respect to Defendant Rowe.

In the summer of 2008, the Drug Enforcement Administration ("DEA") developed two cooperating sources (hereinafter, "CS-1" and "CS-2").  CS-1 and CS-2, together with others, ran a large-scale drug trafficking organization ("DTO"), centered in Chicago, Illinois. The DTO imported thousands of kilograms of cocaine and hundreds of kilograms of heroin from Mexico to Chicago, Illinois and elsewhere.  In early December 2008, CS-1 and CS-2 agreed to set up a number of undercover narcotics transactions with DTO customers, including Defendants.

On December 3-4, 2008, CS-1 and CS-2 participated in five recorded calls with Defendant Terrence Brown.  Law enforcement officers were present in the room during these

calls and recorded these calls while listening to both sides of the conversation. According to the Government, during these calls, Brown agreed to purchase 10 kilograms of cocaine from CS-1 and CS-2. The transaction was originally supposed to take place on December 3, 2008, but Brown had car trouble so the transaction was postponed to December 4. On December 4, 2008, DEA arranged for an undercover officer to deliver 10 kilograms of look-alike substance to Brown.

On December 4, 2008, Rowe was a passenger in a blue Dodge Durango that was driven by Brown. The two traveled together to the area of 31st Street and Normal Street in Chicago to meet with an individual who, unbeknownst to Brown and Rowe, was an undercover DEA officer, and to take delivery of 10 kilograms of cocaine. During the meeting, the undercover officer retrieved a bag containing 10 kilograms of a cocaine look-alike substance, opened the rear driver side door of the Durango, and placed the bag on the back seat. At that point, Rowe exited the front passenger side of the Durango, entered the rear passenger side door, and sat next to the undercover officer. Once in the back seat, Rowe looked inside the bag containing the look-alike kilograms and appeared to be counting the kilograms. Brown handed Rowe a bag containing approximately $14,470, which Rowe then handed to the undercover officer. After the officer took the cash and exited the Durango, Brown and Rowe were arrested. During the arrest, agents recovered two cell phones from Brown's person (hereinafter referred to as "Brown phone 1" and "Brown phone 2") and three cell phones from Rowe's person (hereinafter, "Rowe phone 1," "Rowe phone 2" and "Rowe phone 3").[1]

At Rowe's trial, the Government presented evidence in support of Rowe's charged conduct, which included: (1) recorded phone conversations between Brown and CS-1 and CS-2

---

[1] During a search of the Durango, agents recovered a loaded pistol in a hidden compartment. Pursuant to Rowe's motion *in limine*, which the Government did not oppose, the pistol was not introduced into evidence, or even mentioned, during Rowe's trial.

on December 3-4, 2008; (2) a text message exchange between Brown and Rowe on December 3, 2008; (3) evidence of extensive phone contact between Brown and Rowe during the two weeks leading up to the December 4, 2008 transaction; and (4) the testimony of various law enforcement agents who observed the events of December 4, 2008.  In addition, Rowe testified in his defense.

On January 20, 2011, the jury returned a verdict of guilty.

## II.     Legal Standard

A motion for a new trial is brought pursuant to Federal Rule of Criminal Procedure 33. Rule 33 provides that the court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Newly discovered evidence is the only specifically listed basis in the rule (Fed. R. Crim. P. 33(b)(1)), although the rule allows for a new trial on "other grounds," so long as the interest of justice requires it.  See Fed. R. Crim. P. 33(b)(2).  In this case, Defendant does not argue that he is entitled to a new trial based on newly discovered evidence.  See also *United States v. Bender*, 539 F.3d 449, 455-56 (7th Cir. 2008) (four-part test for new trial based on newly discovered evidence).  The Seventh Circuit has indicated that a motion for a new trial may be granted if there was insufficient evidence to support a conviction or if there were errors in evidentiary rulings, both of which Defendant Rowe argues.  See *United States v. Christ*, 513 F.3d 762, 775 (7th Cir. 2008).  Other appropriate bases have been recognized in other cases, if only implicitly at times.  See *United States v. Hendrix*, 482 F.3d 962, 967 (7th Cir. 2007) (prosecutorial misconduct); *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991) (ineffective assistance of counsel); *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir. 1961) (Burger, J.) (recognizing that the bases for a new trial embodied in Fed. R. Crim. P. 33(b)(2) are broad, though they are "temperately to be utilized").

Federal Rule of Criminal Procedure 29 provides that the Court must grant a motion for a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Evidence is sufficient to sustain a conviction so long as a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Irby*, 558 F.3d 651, 653 (7th Cir. 2009); *United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008).

## III. Analysis

In his motion, Defendant Rowe advances two arguments. First, Rowe contends that the Court erred in admitting into evidence, subject to a limiting instruction, five recorded telephone conversations between Brown and CS-1 and CS-2. Second, Rowe maintains that the jury's verdict was not supported by sufficient evidence.

### A. Recorded Calls Involving Brown and Cooperating Sources

Prior to trial, the Court determined that the recorded phone conversations between Brown and CS-1 and CS-2 were admissible against Rowe—not for the truth of any matters asserted in those calls but to establish the nature and objective of Brown's criminal conduct, which the Government alleged that Rowe aided and abetted. See, *e.g.*, *United States v. Tuchow*, 768 F.2d 855, 868 (7th Cir. 1985) (upholding admission of prior negotiations relating to bribe payment that pre-dated defendant's participation in the conspiracy, reasoning that the "statements were not offered to prove the truth of the statements offered, but rather to set forth the illegality, nature and scope of the anticipated conspiratorial scheme"); see also *United States v. Faulkner*, 439 F.3d 1221, 1226-27 (10th Cir. 2006) (explaining "verbal acts" doctrine and noting that

4

statements "directing the conduct of a fellow conspirator or agreeing to follow directions" are not hearsay); *United States v. Roach*, 164 F.3d 403, 410 (8th Cir. 1998).[2]

Consistent with this limitation, the Court instructed the jury as follows:

The recordings contain statements said to be made by Terrence Brown. With respect to defendant Lynn Rowe, you are not to consider defendant Terrence Brown's statements made on the recordings to be evidence that what was said is true. However, you may consider the statements made on the recordings by Terrence Brown to place in context the conduct in which defendant Lynn Rowe allegedly participated.

While the recordings provided context for Rowe's actions, they did not mention Rowe, or even allude to a third-party's participation in the December 4, 2008 transaction. Thus, although the recordings to establish the nature and objective of Brown's criminal conduct, which the Government alleged that Rowe aided and abetted, the recordings, in and of themselves, did little to inculpate Rowe directly. Accordingly, there was little, if any, danger of unfair prejudice to Rowe, and, as the Seventh Circuit has repeatedly stated, "limiting instructions are effective in reducing or eliminating unfair prejudice," *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008).

Furthermore, even if the Court's decision to admit the recordings was erroneous, any error was harmless in light of the substantial evidence of Rowe's guilt. In particular, the Court notes Rowe's undisputed presence at the scene of the drug transaction and the eyewitness testimony from the undercover officer and other officers who also were at the scene.

Finally, the Court also notes that it severed the trials of Defendants Rowe and Brown, in the interests of justice and fairness, after considering the difficulties that jurors may have in receiving and knowing how to work with the evidence concerning Brown's post-arrest

---

[2] In contrast, as noted by the Court in its motion in limine rulings [DE 116 at 6 n.2], Brown's subsequent post-arrest statements admitting that he had agreed to purchase 10 kilograms of cocaine for $28,500 per kilogram would be hearsay as to Rowe.

5

confession. The Court reasoned that, given the parties' respective theories of the case, the potential spillover effect on Rowe from the use of Brown's post-arrest statement simply was too great, even with a limiting instruction, and outweighed the Court's initial inclination that the two Defendants could fairly be tried together. The Court's severance ruling eliminated any potential spillover effect from Brown's post-arrest confession and also undercuts Rowe's contention that he was "damned from the outset because of his implied association with co-defendant who was in fact guilty and obviously so." See Rowe Motion for New Trial at 2. The recorded calls prior to the drug transaction established the nature and objective of Brown's criminal conduct, which the government alleged that Rowe aided and abetted. With the limiting instruction, those calls were properly admitted to show context for Rowe's own conduct.

B.     **Sufficiency of the Evidence**

Viewed in the light most favorable to the United States, there was ample evidence introduced at trial from which a rational juror could have found Defendant Rowe guilty on Count II beyond a reasonable doubt. The jury's verdict was supported by the following evidence.

First, the Government presented evidence of a text message exchange between Brown and Rowe on December 3, 2008, just prior to the time when the transaction was initially supposed to take place, in which Brown stated: "Lets go baby & c the wizard i am at the church don't play wit it." Within minutes, Rowe responded, "Ok." The Government maintains that this evidence, when considered together with Rowe's subsequent conduct on December 4, 2008, provided substantial evidence of Rowe's guilt. At trial, Rowe's counsel presented evidence to support the theory that Rowe and Brown were planning to attend a Chicago Bulls/Washington Wizards game on December 6, 2008. Although the text message evidence is not overwhelming, it was properly before the jury and, given the surrounding circumstances, it was for the jury to

decide which of the competing inferences, if any, to draw from it. See *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996) ("a conviction may be based solely on reasonable inferences from circumstantial evidence").

The Government also presented evidence of 16 phone contacts between Brown and Rowe on December 3-4, 2008. In its closing, the Government highlighted the fact that the December 3, 2008 contacts were close in time to the December 3, 2008 phone calls between Brown and CS-1 and CS-2. Further, the Government presented evidence of 68 phone contacts between Brown and Rowe in the two weeks leading up to the transaction. Once again, this evidence was properly before the jury, and it was a reasonable inference that this evidence supported Government's theory of the case—namely, that the repeated, frequent phone contact between Brown and Rowe was incident to planning and effectuating a drug transaction.

Finally and most significantly, the Government presented eyewitness testimony regarding the events of December 4, 2008. In particular, the undercover officer testified that, after he placed the bag with the sham kilograms on the backseat of the Durango, Rowe immediately exited the front seat, entered the backseat, unzipped the bag, looked inside the bag, and appeared to be counting the kilograms of cocaine. The undercover testified that Rowe did not appear scared or confused; nor did he ask any questions of Brown or the undercover officer as he engaged in this conduct. The undercover officer further testified that Brown handed Rowe a bag filled with cash, which Rowe then handed to the undercover officer. The testimony of other law enforcement witnesses who were conducting surveillance that day largely corroborated the undercover's testimony. This evidence, even without the phone calls and text message, plainly provided sufficient evidence of Rowe's guilt.

"Judges do not set aside jury verdicts very often, and when they do, they must have a good reason for doing so." *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005). This case neither presents the rare scenario in which a conviction rests "on mere speculation or conjecture" (*Pinckney*, 85 F.3d at 7) or the almost equally rare circumstance in which verdict rests on the evidence that is "equally consistent with a theory of innocence as a theory of guilt" and thus cannot "establish guilt beyond a reasonable doubt." *United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991). Rather, viewing the evidence in the light most favorable to the Government, there was ample evidence to support Rowe's conviction on Count II. Therefore, the Court concludes that sufficient evidence supported the Jury's verdict in this case.

\* \* \* \* \*

In sum, the Court is not persuaded that its ruling on the recorded calls was erroneous. Furthermore, even if the Court erred in admitting the five recorded conversations between Brown and the cooperating sources, any perceived error did not give rise to the kind of substantial prejudice that might support the grant of a new trial, particularly in light of the strength of the evidence presented by the Government at trial on Count II of the superseding indictment— particularly, Defendant's presence and conduct at the drug transaction as testified to by the undercover officer.

## III. Conclusion

For these reasons, Defendant Rowe's post-trial motion for a new trial [152] is respectfully denied.

Dated: March 17, 2011

_____
Robert M. Dow, Jr.
United States District Judge